We are happy to hear and hear argument in the United States v. Young, Mr. Pritzker. Good afternoon, your honors, and welcome to Philadelphia. My name is Rex Weitzman, Federal Defender Office, here representing the panel on Mr. Young and his case. At this time, I'd like to reserve three minutes for applause. Thank you. Mr. Young was sentenced to a top-of-the-guide audience 18 years in prison. Now, his guideline range was enhanced by four years of those 18 under 3C1.1, when he failed to fully respond to the SEC's request to examine his books. The issue in this case is whether the obstruction enhancement, the plus-two obstruction enhancement, is appropriate in these circumstances, since giving regulators, compliance regulators, from the SEC or from any other regulatory body the runaround, which is essentially what Mr. Young did, is part of the scheme to defraud in a regulated industry, and in fact was charged as such in the indictment in this case. And also, given the fact that his conduct did not have any impact on the criminal investigation, it certainly wasn't likely to thwart that investigation. And it's also important, I would suggest to your honors, to keep in mind that the conduct here was punished in other ways in this case, with respect to the 22-level loss enhancement, with respect to sensing the top-of-the-guide audience. But as we know, the guidelines single out certain features of any criminal conduct applied to various enhancements, more than minimal planning, sophisticated means, leadership role, various things of that sort. And is it possible to view obstruction of justice as capturing the part of the criminal conduct that is engaged in here? Because it wasn't in the indictment. It was obviously part of the conduct. But also, there was a component of obstruction. Let me put it this way. Just because it's obstruction of justice doesn't mean it has to be outside the criminal conduct, right? I mean, it can be in the criminal conduct as just another aspect of the kind of conduct that occurred and that should be captured, arguably, by the guidelines. I think your honors put your finger right on the first point in our argument, which is, that's correct. Clearly, this is conduct that is culpable conduct that was involved in the offense here. And that's generally what the guidelines look at in terms of applying enhancements. But what we need to look at here is, in this context, the Third Circuit, back in 2003, made a very important ruling with respect to, when you have obstruction, which, when you look at it, can sort of be looked at as an integral part of the offense itself. Which you might call intrinsic obstruction. You might call it intrinsic. You might call it part of the offense, or something like that. When you have that sort of obstruction, like you have, I would submit, in this case, the Third Circuit looked at that and said, OK, they made a clear choice. There was two approaches to how to handle that situation. One approach was from the Eighth Circuit. And the Eighth Circuit took what I would suggest is sort of a common-sense approach. And this is embodied in the moral in your case. Common-sense, because that's the approach you prefer. No, I would say common-sense is in juxtaposition to the Sixth Circuit approach, which, again, the Third Circuit looked at in Clark. And the Sixth Circuit approach took a very technical approach, which was, if the obstructive conduct is not coterminous with the offense. In other words, if the obstructive conduct does not itself, or not taken in isolation, count as a violation of the substantive criminal statute, then it can base a three-seat 1.1 enhancement. So that's a very narrow approach. But your view would be then that you couldn't have a three-seat 1.1 enhancement in a case involving fraud during the period of the fraud, if you lied to investigators or regulators or the government. No, not at all, Your Honor. What would be the limiting principle, then? The limiting principle to your rule, that would actually say that you could, there could be circumstances then. Where would you draw the line? The hard part of this case is really, in my view, is sort of where to draw the line. I think Your Honor is right, and let me offer some suggestions. First, one line that makes eminent sense in this case, because it derives from the language of the application notes. The language of the application notes require the concealing of, this particular relevant application note, the concealing of evidence from an official investigation. So that's what this would require. Now, in this context, in the SEC context, we have a very bright line between what is an investigation and what is not. I don't know how right that is. I understand your point. So you've got a compliance exam, you say, as opposed to an investigation conducted by different divisions. But suppose the compliance examiners are aware of the possibility of criminal conduct, and they're making, they're inquiring into that, and they want to get all the records that might pertain to that as part of their compliance. Suppose a compliance investigation normally would just be reviewing public documents and asking for a few routine records, but now they want more. Because they're concerned and they're worried. That, you said, would not be obstruction of justice if you withheld documents to that group. Well, in terms of, I don't think it turns on the sort of button ahead of the regulators. I think a better rule would be what is, what is. . . Well, you're trying to make a distinction between the kinds of investigations. I wasn't. Right, but I thought, I think the. . . That's what I thought. That is part of it as well. And if it's not charged as relevant conduct in the indictment or an act, then your clerk doesn't help, right? Doesn't help you. I'm sorry, if it's not charged in the indictment? Yes. That's a key factor here because the government obviously is in control. I know it's a key factor, but I didn't mean the clerk would not help you. That was the question. I believe clerk would still help us because clerk. . . Clerk has two parts, and one of them relies on the fact that it's charged in the indictment, does it not? It does. Okay, and that's the part you're relying on, clerk, right? Well, clerk, yes, clerk extends to both the Lloyd context where it's just part of the offense and the Lemire context where it's a coterminous part of the offense. And you recognize it's not coterminous. That's correct. You're only relying on the first part. And essential to that was the fact that it was charged in the indictment. That's correct, Your Honor. So to avoid, to have this rule not extend indefinitely, your simplest answer would be, well, the government doesn't charge you in the indictment. I'll accept that. Is that enough? I don't think so. I think it is. I'm not suggesting that there's any sort of silver bullet here so that there's a litmus test. If it's in the indictment, it counts. If it's not, it doesn't count. However, what is important is the coalescing of the factors here. Here we have it charged in the indictment. That's how the government saw this as part of the offense. And we have, and I would suggest to Your Honor, Judge Walker, that we do have a meaningful distinction in culpability when we look at the conduct from the standpoint of the defendant because we're judging his culpability after all. So what I would suggest with respect to your hypothetical, Judge Walker, is that what is important is there is a distinction between someone in a regulated industry essentially keeping regulators in the dark or under the facts that we have here, essentially putting his head in the sand at the end of his scheme and not answering the system's phone calls. This is a little different from keeping regulators in the dark in the normal sense because he did it believing that the jig was going to be up and therefore it was done to put off, if you will, the inevitable, which he thought would be the inevitable. He didn't want to face it. He put it off. I don't want to become too much of a psychiatrist into this defendant's mind, but it wasn't just the way he might have treated other regulators in the past by not disclosing things or routinely submitting a false document or something of that sort. This was at a time when he believed he was under, you know, the jig might be up. Can you help me with that point? I wasn't clear from the papers that we had in front of us, but it seemed to me that part of his delay was to help the redemption by some of favored investors. Was that correct? I don't believe that's borne out in the record. Because there was a larger amount, remember, that goes back a hundred and some, and then there's only this. It's not clear exactly how those numbers are derived. What we do know is over the course of the entire scheme, I don't think there's any change in conduct or intent that can be inferred because of this reason. Over the course of the scheme, almost $100 million was taken in, and a large amount of that money was stolen. So $20 million at the end of the scheme was what the loss was. Now, here in this January to March time frame, what we had was $100,000 coming out and money going back in. So I think it's in line with what was happening on loss. I don't think there's any suggestion in the record or inference to that effect. Now, with respect to the jig being up, what we do know from the record here is that Mr. Young and his company had been subject to compliance examinations like this in the past. We know, obviously, that his fraud was not caught at that point. We don't know the record for that. I'm sorry, I didn't see from the indictment you brought with me, but were other compliance examinations also alleged in the indictment that he lied to other regulators? No. No. No. It was just this one. Just the one. Yeah, Paragraph 11, right. So if they hadn't charged in Paragraph 11, would the case be different? I don't think so, Your Honor, because what we have here is even without the indictment, what we have here is essentially what it boils down to is we do not have an official investigation. That's not what this is. So it would have made a difference if this was the Office of Enforcement Compliance or whatever, the other, the Enforcement Division. For the first argument, I readily concede that if once the Enforcement Division gets involved, that's an official investigation under the guideline. Now, there's still a problem in terms of impact, which we haven't discussed yet. Yeah. But what we have here is what this is. So this investigation doesn't count, essentially, a compliance investigation. 403C1.1 doesn't count in your view. In my view, yes. This is a regulatory compliance procedure. Now, which is not to say that it wasn't wrong from the beginning to do this, that people shouldn't abide by it. No, no, no. We understand that from your growth. Yes. I have to go back to what you just said. And the case may not be different because, after all, you have two arguments, both with respect to the first argument. If you didn't have Paragraph 11 in the indictment, and the indictment didn't say that the activity, the criminal activity, extended through in or about April 2009, do you still think that you would prevail in your first argument? I still think we would, Your Honor. And maybe you can tell me how in two or three sentences. Okay. Because what happens is, in Clark, the governing case here, a common-sense approach, this is just what happened in Worthington. In Worthington, the conduct was not charged in the indictment. What happened was that it was a 10-year fraud, just like in this case. And when the jig was up, so to speak, the defendant tried to get all of them to leave the line of the auditors. Well, I think that is different because that was a government investigation. I think the Eighth Circuit cases are marginally of help because it's very difficult to understand what the facts were from the opinion. The Sixth Circuit case is, I think, of a great deal of help to you. But critical to the Sixth Circuit case and to its help to you is that it was charged in the indictment. And still, the court said the Third Circuit rejects that. That's correct. And I would suggest, Your Honor, what is critical there is that the Sixth Circuit, which, as you heard on this court, was squarely rejected in the Third, is that the test is limited to coterminous conduct. That's what the Sixth Circuit said. And, in fact, that's sort of bordering on what the Fourth Circuit has said more recently. However, by coterminous, just so we're very clear what you mean, it means that the action itself could have been charged for the same violations. It's sort of like multiple violations of the substantive. And here, quite clearly, you couldn't have taken this deception of the regulators out and charged it under your statute. That's correct, Your Honor. Okay, I misunderstood. I didn't know that your first argument was relying on the coterminous. I thought, because I thought you conceded, that this was not coterminous. And I thought that the part of the Third Circuit case upon which you were relying was the first argument, which says, here the conduct that is cited as an obstruction is actually activity that is part of the underlying charge defense. The indictment states, it seems to me, pretty heavily relying on the fact that it was an indictment. I'm sorry, Your Honor, for the confusion. Maybe I can just step back and give you sort of the whole picture of what I at least think is my argument here. You're absolutely correct. Clark, the most important aspect for us in that case is the indictment language aspect. I absolutely agree with you, Your Honor, on that. What I'm suggesting, even without that, it still is helpful, and here's why. Because Clark adopts the Eighth Circuit approach, which is both Roy and Vermeer, and which is Graham v. Roilinger, which I would submit is a case that's spot-on with our case factually. And the court actually, in Roilinger, set aside the whole issue, whether it was the bank, whether it was the state authority or the FBI, and said that's not relevant to our case. But we found that it was a distinction. Absolutely. But what I was trying to suggest, Your Honor, is I think there's more to draw out of Clark than just the indictment language. And, of course, then the other aspect of it, which is the rejection of Sabino, which is critical here as well. If I may, Your Honor, I see I'm not going to run so long. We haven't spoken of this second issue. I would welcome an opportunity here. It's fine with me, yes. We'll give the government some extra time, too. We're equal. Let me give you seven extra minutes. Okay, so you came all the way from out of town. With respect to the impact aspect, I think there's a large degree of agreement, frankly, between the parties as we boil down through the briefing. And that's the Jenkins, the Sabino Third Circuit case. Jenkins does impose in a narrow set of cases an impact requirement. And that is when obstructive conduct is focused at another proceeding, not the federal criminal proceeding, but a parallel precursor proceeding in the state, a parallel symbol proceeding, whatever else. When the obstructive conduct is focused somewhere else, there has to be a nexus. And Jenkins says that nexus is some impact on the eventual federal criminal case. I think we've got time for one more. Under the Huessen amendment to the guidelines, although it's not done Huessen now, it's, I guess, six years ago, I thought the test was that it was properly calculated and likely to thwart the investigation or prosecution of offensive conviction. That's correct. That's the test, isn't it? That is the test, but that does not supplant Jenkins. And I think it's consistent with him, and I'll try to explain that. First of all, of course, the common ground here is now we all agree, unlike Borel, I think, what Jenkins means and what Jenkins holds. The issue now with the appeal is, is Jenkins still good law, I think, and part of the issue. And it is good law because I believe it's consistent with the guidelines. And first of all, as I said in the briefing, I won't belabor the point here. When you look at the guideline amendment, what it has to do with is the general proposition of pre- and post-obstructive conduct. Jenkins, that was not an issue in Jenkins. The sentencing conditions in the ending of Jenkins were the third term of the ending house. No one's ever challenged Jenkins after 2006 as being not good law. But what's probably even more critical here for us, and what I'd like to add today, is that the government's argument hinges on this notion that somehow in 2006, what was before, a focus on actual result or actual impact of obstructive conduct, that that will become some sort of just intent-based situation. And that's just not the case. It's always been the law. Before 2006, there was nothing to do with intent. My view to the fact doesn't speak to intent in my mind. It's more of an objective test. I'm sorry, yes. The whole test is purposely calculated and likely to thwart the investigation defense. So there's sort of an intent part of it, and there's a probable result part of it. But you're focusing on the actual. Exactly. So you're focusing on the actor. But what I'd like to suggest, Your Honors, is before 2006, that was still the law. Attempts, it's always been the case that under the guideline as written, there has been no result requirement. Attempts have always qualified for 3C1.1 enhancements. So there's nothing in 2006 that radically changed that view. Yet, when the Third Circuit looked at this particular type of factual situation where you have obstructive conduct focused here and the federal criminal investigation is later or over here, there will be an impact requirement. So nothing has changed. The Third Circuit has always said that. And nothing in the 2006 amendment will change that. But even with it today, Your Honors, likely to thwart is the new standard. And so what this court would have to do is it would have to look at what happened in this case and say, was Mr. Young's burying his head in the sand and sort of dribbling out documents in response to requests from the SEC for that? How would we know whether it would be likely to thwart unless we knew something more about the documents themselves, which the briefing hasn't covered? In other words, it may be that certain documents would automatically lead to the conclusion of wrongdoing once they were released. And then under those circumstances, I think the way the posture of the case is set up, that is more likely than not what he did, was to withhold the documents that would immediately expose him. Well, I don't think it does turn on the particular documents. And here's why. Because there's no doubt that he was withholding documents. What did the SEC do? The SEC went to his accountants and got the documents. They went to Cressa. They went to the brokers. They got the documents. So the issue here under the post-2006 language is likely to thwart. Is it likely to thwart? So your position is that if he could have gotten the documents, if the governor could get the documents elsewhere, the investigators, criminal investigators, get the documents elsewhere, then it was just sort of, it didn't matter. No harm. Well, I mean, there's harm. And there's foul in the sense that he gets sentenced for probable reasons. Conduct can come into play. But what we have here is 29 levels of enhancements in this case. And so the question is, does the two, I would submit, do we twist and tweak and torture the doctrine a little bit in order to get him to cross-took? Here is a general question about that. The district court can look at the statutory factors and come up with any sentence it wants. I understand your argument here is that the sentencing range wasn't calculated correctly. But suppose that we should rely, we should adopt one or the other of your arguments in reverse. You could go back to the district court. The district court could come up with exactly the same sentence on the basis of the statutory factors, couldn't it? It's possible, Your Honor. I would think that unlikely. But I think it's possible. Well, the district court, the rest of its opinion pretty thoroughly goes through. The district court seems from reading of it, you were there and I wasn't, to have been outraged by your client's conduct and did sentence him at the very top of the guidelined range. So there's a lot of indicia that even if this, even if you should prevail here, you might well receive the same sentence. That doesn't do anything. It's just that when you keep talking about this huge difference, I just wonder in the world if that's going to make a big difference. I welcome the opportunity to test that. I'm sure. Can I ask you just one more question? When you were responding now to the second argument you have, am I understanding you to say even if the government's right with respect to the no longer recent amendment to the guidelines and Jenkins is not the law, my client should still prevail in the second argument? Is that what you're saying? Absolutely. And it should prevail because? Because the intent, the likely to thwart language is a high bar. It's a significant bar. Now, it's not defined in the guidelines. But what we have to do, as we always do in 3C1.1, the third circuit and I'm sure your home circuits have probably similarly taken note of the fact that 3C1.1 is somewhat ambiguous. It's amorphous. And so what we have in the application is we have a list of things that count as obstruction, things that don't count. And a court has to face a situation where, well, where does this fit in in the constellation of the spectrum? So what I would submit to your honors, that's still essentially the inquiry. But if you had done the trial and not testified, just sat there for six weeks and during this due process and otherwise, the government would be here seeking this enhancement? I do. I suspect they would. You think so? This is not a function of a failed plea agreement? That's not, I understand. You agree to everything else? That's right. Yeah, because, and I think this does point out a valuable fact here, which is that there's no question about acceptance or responsibility. There's no question it was a serious offense. That's right. There was no failed plea agreement to resolve this violation? Well, the parties couldn't come to an agreement because Mr. Young, and I would submit rightfully so, recognizes that this is not what the enhancement process looked like. Thank you very much. Appreciate your answer. Mr. Gray? Thank you. Good afternoon. Good afternoon. I'm Paul Gray with the government. Mr. Gray, can I clarify one thing before we get started? I think it's clear. Go ahead. The factual basis here is solely nondisclosure. In the same way, there's no contention here that the defendant created a new false document. That's correct, Your Honor. The district court's opinion specifically noted that it was Megan's decision on obstruction following on Young's failure to turn over the documents required by law for him to turn over. Some of which were actually false documents, right? Well, on the record, no. I thought that it was pretty clear that some of the documents that they were tied to were some of the altered, formerly made documents that he used in the course of his game. That's true. There were false account statements and all of that. That's correct, Your Honor. And they're the ones he did not turn over. Right. Exactly. Exactly. So my point is he didn't make those and then turn them over in the course of the investigation, except he didn't turn them over. That's correct. OK. So it's all about nondisclosure. Yes, Your Honor. Failure is tied. Yes, sir. OK. I just wanted to make sure. And Judge Walker, you asked a question about was there any differentiation between the documents here. I brought out testimony from the SEC section chief that the particular documents they wanted, the investor lists and the quarterly statements, were the ones they did not get. And they specifically asked for those and they got boxes with some documents in it, but they never received those documents. And that's why they had to go to the third parties to get the other information, continue their investigation, and that led to the following point. They never received the documents that would have tipped them off to the appropriation. What if he had shut down his office after the second day or the third day of the examination and just didn't answer the phone? Would that be obstruction of justice in the context of this case? If the investigators had arrived, given him with the documentation, provided him with documentation that says one of the lawyers required to give us these records and he didn't give them to them, it may very well apply, yes. Well, it may very well have or it may have not. Well, I'm answering something that didn't happen, so it's hard to say. Actually, I'm not sure it didn't happen. I'm trying to see the difference between him complying with the examination for two days and producing, let's say, 30% of the documents and then deciding, as Judge Waldron correctly put it, to kick us out, I'm just going to go back to Boca Raton and wait for the hammer to fall. And he just didn't answer the phone. I understand that, but that's not all that happened. What else happened? He continued to steal while the SEC was trying to get the records. But stealing is an obstruction of justice. No. Stealing is stealing. Stealing is a crime of law. Stealing is a crime of law. But stealing is an obstruction of justice at the 3C. I'm not sure. We're saying that failing to come up with the records that would have tipped the SEC off to the fraud, that causing them to spend some months going to other places to get the records, during which he stalled, was an obstruction. And during this, he continued to steal. That's just the result of it. That's not the crime. How does continuing to steal help you on the obstruction of justice? I mean, it may not be one of the 35 things that we have, as Judge Botts suggested, but how does it help you on the obstruction of justice? Because, as your Honor said, the test now, under the amendment, is whether or not he purposely and willfully undertook to obstruct the investigation. Yeah, but you have wavered back and forth in the district court and in your papers here telling us about what investigation. What investigation do you have to prove that he obstructed? The SEC investigation, Your Honor. That's your position, not the government's, the criminal case? The investigation of the facts. No, no, no, no, no. But what investigation has to be the end line? Does he have to be obstructing the criminal trials, the new charges, or do you have to... No, no, no, no, no, no. Is that right? Okay. See, I meant your brief is saying that. That's correct. And in the context where I said the government's criminal case was not obstructed was in the context of having a discussion that Mr. Young did not do any actions to thwart any federal criminal investigation. Directly? Directly, because... You can't say he didn't do anything to thwart the criminal investigation at some point because that's not a test. He did nothing to thwart directly.  That's correct, Your Honor. But indirectly, it is a delay to the criminal investigation because obviously... What evidence shows us that? The only evidence, Your Honor, is on the record that the investigation by the SEC started on January 19th. Right. We served our criminal search warrants on April 17th, the same day the SEC issued its complaint against Mr. Young. It came in and let everything out. He filed the indictment for another year. That's correct, Your Honor. The record... It is just apparent from the record that the SEC and the federal U.S. attorney's office are talking since we're searching our office on the same day as their complaint. That's the nature of the examination. Okay. Are you going to address the first argument or are we going to talk about the second one? I'll address the first argument. Okay. Clark, which defense we rely upon, is a very narrow opinion. In this circuit, the law is that co-competence or identical conduct does not merit an obstruction. And that is not what we have in this case. We have a nine-and-a-half-year-long Ponzi scheme with Mr. Young's falsified records for his investors. You can see how you could look at this two different ways, right? I mean, you could say, Well, sure. It couldn't be... His only set of documents couldn't be... wasn't in itself bail fraud. It wasn't in itself, you know, any kind of charged offense. But on the other hand, mail fraud usually involves a scheme to defraud. The mail is there to get your federal jurisdiction, but it's basically a scheme to defraud that extends over a period of time as many facets. And arguably here, one of the facets that was charged in the indictment was concealing from the investigators in April. We include one paragraph as notice to the defendant of what had occurred. I don't think that means... No, it wasn't. It was more the notice of what was alleged as part of a charged offense. One very small part, one three-month period of a 10-year crime. Well, it was larger than the part in Sabino, the Sixth Circuit case, which you haven't even addressed in your brief, in which the Third Circuit rejected. So tell me how you distinguish this case from Sabino. I'm not sure, on behalf of the government, that the Third Circuit quite rejected Sabino. It's actually a pretty... Particularly from the judge who wrote this opinion, I thought it pretty direct. It appears that a conflict exists between the Court of Appeals where the Sixth and Eighth Circuits, and reviewing their respective interpretations of the sentencing guidelines, we are persuaded by the Eighth's reasoning rather than that of the Sixth. That is a pretty direct rejection. Now, usually when we are rejecting someone on our sister circuits, we try to let them in or let them out. It appears there's a conflict, but what I'm seeing here is a conflict in the factual resolution of the case. The Eighth Circuit, especially through the cases cited by the defense lawyer, said that bankruptcy perjury appeared to them to be simply concealing assets within the event of conviction. I think if we only had the Eighth Circuit cases, I'm not sure I'd disagree with you, because it's very hard to understand what the underlying facts are in those cases. But what I'm asking you about is the Sixth Circuit case, a more recent case, which has, I think, facts strikingly like the one you named. It does, Mark. And the Third Circuit rejected that approach. But the Third Circuit came to a different result for what they find to be the obstructive conduct. The only rule the Third Circuit right now is that identical conduct does not support the enhancement. Well, how do you get that to be the only rule? There are two paragraphs here. If you didn't have the other paragraph, you could have ended the opinion. Here, the conduct that is cited as an obstruction is actually activity that is part of the underlying charge defense. The indictment states, blah, blah, blah, production of the brokest grocery tickets occurred within the cited period and thus was encompassed within the time the crime was said to occur. That is all applicable here. It's only the next paragraph that you say is the holding of the case. Maybe you're right, but it's not, to me, so readily apparent. I'm not sure that in the clerk indictment it included completion of a document that turned out to be obstructive conduct. I'm not so sure that is written correctly. I understand the clerk to be saying the crime the person was convicted of was making a moral statement that I'm a citizen when they were not, and they handed over a document which said they were a citizen when they were not, and the court decided that's one crime. That is literally two acts for one crime. Your point there would be that under the coterminous language that that could have been charged separately. That particular act alleged to have been the obstructive conduct was in itself the kind of crime that was charged as the crime. That's correct. I would not have brought a separate indictment under that action based on that action. I would not have brought a separate indictment based upon that action. It's simply two pieces of evidence to prove the same crime. One a moral statement that said I'm a citizen and the other a fake document. I would not have... In fact, we don't disagree... We don't disagree with that decision with Clark based on the narrow holding. We're simply saying in this case this is not Clark. Is it your position that notwithstanding the fact that this was named an indictment  that this is like all the other enhancements that exist in the guidelines that pertain to various aspects of the criminal conduct and I sort of opened my first question with this. It's a complicated scheme. It involves many players. All of these enhancements and there's instructive justice as part of it. Your position is the guidelines should take into account this kind of conduct. Exactly. And that's why Mittens alludes to your question about that. In this particular case Young admitted that my conduct was an abuse of trust. It was sophisticated. It was a loss to a number of people. We didn't agree to the obstruction. But let's say I had written a paragraph where I was describing Mr. Young's conduct concerning his victims. If I had put on the line what they were saying and by doing this by giving them false investor statements and my line to them he abused their trust. Under their theory under defense theory they can then say it's in the indictment. The abuse of trust is in the indictment. As I understand it they're relying on Clark which deals with obstruction of justice. And it's that one paragraph in Clark and with the Clark's rejection of the Sixth Circuit case. I'm really trying but I don't understand your distinction between this and the Sixth Circuit case. I'm saying that on the facts here if they're being defensive under our theory we would agree with Sabrina. We do. In fact you're on it but Brown, you are the Fourth Circuit and Thornton came to a very similar conclusion. We're here though not to discern what the correct view is but in the Fourth Circuit or in the Sixth Circuit but in the Third Circuit. And the Third Circuit rejected Sabrina which you say is exactly like this case. Your Honor, I'm saying the facts of this case are markedly different than the facts of Clark. That's what I'm saying. Is your theory that coterminous means if you have a 10-year scheme that the obstructive conduct must encompass the entire 10-year period? I think that would be too broad a statement to make, Your Honor. Eight years? I'm just saying that in other words what do you mean by coterminous? Coterminous according to Clark means identical. Well, 10 years versus identical in 10 years. You said, well, maybe not 10 but I'm trying to figure out what less than 10 is identical to 10. Your Honor, if we charge in the indictment that was part of this main scheme to falsify records to the SEC and create false documents to the SEC that still may be an obstructive enhancement if that applies. Just like abusive trust applies when I put that in the indictment or whether leadership had applied if I put that in the indictment. The guidelines are conduct oriented. If you take what's written in the indictment and have that rule the guidelines then you do away with a number of the enhancements. You could do away with leadership. You could do away with abusive trust. You could do away with sophistication because it's all encompassed in the conduct that's written in the indictment but the indictment doesn't rule. The conduct does. And Your Honor, I'm sorry if I'm making my point clear. I'm simply trying to say that our point is we don't disagree with the holding in Clark. Well, you can't. No, I'm saying if I were the assistant on that case I would not have been ruling for an obstruction enhancement based upon the piece of paper that said the same thing we want but guilty to. When you assign the Clark issue and the kind of conduct how was the investigation first of all was this was this an investigation as such or was it a compliance exam that is routinely regulated setting in which there was a withholding of documents from the examiners and shouldn't that make a difference? No, I don't think it does. You use the term investigation but if it's a compliance exam every fraud would have to be involved because routine compliance is under investigation 14 years of conduct and they have examinations every two years and the investigation starts and they can't get the evidence and the agents are lied to all along for the last 10 years the examiners can't get the evidence under those circumstances if it doesn't matter if those are investigations then you have obstruction of justice theoretically all the way through the period of the indictment right? Every two years every time there's an examination theoretically it's not because in fact this was an investigation in fact that's what it was it was a cause examination and the record doesn't go beyond that well that's the problem is that it was done by the C.I.E. or whatever that is as opposed to the enforcement division it looked to me like just the C.I.E.   division and it was not discussed in front of the district court we didn't discuss check-ins and we did not discuss the indictment the government has not made any arguments the arguments weren't preserved so I guess it seems to me that the arguments about sentencing in front of the district court are very different than the arguments in front of us about sentencing that's unusual where I come from the record does not develop on that basis the record is on course examination the information they took when they continued an additional examination and investigation was third-party added up to the complaint the search warrant was there any evidence about what was a cause of investigation I thought there was scattered evidence about what a cause examination means only a footnote as to what the SEC described to me was a cause of examination there was no discussion outside the record there was no discussion about what a cause examination is I believe on course examination the SEC witness when asked whether this was routine said no it was a cause examination did not describe a cause examination I admit I misspoke redirect getting into that issue may I address the next question how did it thwart the investigation how was it likely to thwart the investigation the language is quite clear in Jenkins they applied an actual thwart of the investigation the amendment does not require an actual thwart it requires a thwart that is what the language is down with the district court found not only was it likely to thwart it did thwart it was likely to thwart the criminal investigation only because as your honor said in an indirect fashion the criminal investigation was thwart the way the record reads is the minute the SEC complaint came out we did our search warrant it should just mean that every time you refused to turn over documents to a regulator that's likely to thwart the criminal investigation if that documents would reveal criminal conduct that could be your honor with the document you're going to   to a     to thwart the criminal investigation if that document would reveal criminal conduct that could be your honor with the regulator that should mean  every time you    over documents to a regulator that's likely to thwart the criminal investigation if that document would reveal criminal conduct that  be your honor       every time you over documents to a regulator that should mean every time you over documents to a regulator that should mean every time you over    regulator that should be on the Board of Directors every time you over this regulator document that should be on      time over this regulator document  should this regulator document that  be on the Board